UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARINA TSESARSKAYA,                          :

                    Plaintiff,         :

            -against-                  :

THE CITY OF NEW YORK, LIEUTENANT             :
MICHAEL McGUINESS, DETECTIVE JAMES
COLL, Shield #01121,  and DETECTIVE SEAN     :
MULCAHY, Shield #03204,

                            :

              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

           11 Civ. 4897 (AJP)

        **OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Marina Tsesarskaya, represented by counsel, brings this action pursuant to

42 U.S.C. § 1983 against the City of New York, Lieutenant Michael McGuiness, Detective James

Coll and Detective Sean Mulcahy, alleging violations of her constitutional rights under the Fourth,

Fifth and Fourteenth Amendments and under state law.  (Dkt. No. 1: Compl; Dkt. No. 8: Am.

Compl.) Tsesarskaya specifically claims deprivation of federal rights, false arrest, excessive force,

failure to intercede and municipal liability under § 1983, and assault, battery, false arrest, false

imprisonment and negligent hiring, training, supervision and retention under state law.  (Compl.;

Am. Compl.)[1/]

        Presently before the Court is defendants' motion for partial summary judgment on

Tsesarskaya's claims except her excessive force, assault and battery claims.  (Dkt. No. 10: Defs.

---

[1/]     Tsesarskaya also sued John Doe defendants, but as she has not further amended her
       complaint to identify them by name, the John Doe defendants are dismissed from the case.

Notice of Motion; see also Dkt. No. 13: Defs. Br.; Dkt. No. 27: Defs. Reply Br.)  The parties have

consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No.

15.)

For the reasons set forth below, defendants' summary judgment motion is **DENIED**

as to the false arrest and municipal liability claims under § 1983, and false arrest and imprisonment

claims under state law, but **GRANTED** as to the state law negligent hiring, training, supervision and

retention claim.

## FACTS[2/]

On November 12, 2010, real estate agent Artis Minor contacted Tsesarskaya to see

if two Italian women could rent her apartment for three days.  (Dkt. Nos. 11 & 24: Defs. &

Tsesarskaya Rule 56.1 Stmts. ¶ 5;[3/] Ex. C: Tsesarskaya Dep. at 139-41.[4/])  While the parties dispute

exactly what happened after the Italian women arrived, they agree that the women had a

---

[2/]     Tsesarskaya contends that the following submissions by defendants are hearsay and cannot be used on a motion for summary judgment: CCRB Interview Details for Officers Asters and DeLeon and Sergeant McGuiness (Dkt. No. 12: Frank 1/9/12 Aff. Exs. F-H) and the portion of the IA Detailed Description that contains descriptions of the 911 calls (Frank 1/9/12 Aff. Ex. K).  (Dkt. No. 17: Tsesarskaya Opp. Br. at 2-3.)  The Court agrees.  See, e.g., Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) ("In determining the appropriateness of a grant of summary judgment, we, like the district court in awarding summary judgment, may rely only on admissible evidence."); accord, e.g., Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010).

[3/]     Tsesarskaya's Rule 56.1 Statement only enumerated disputed facts and additional undisputed facts.  Thus, where facts are not disputed, the Court will cite to them as "Defs. & Tsesarskaya Rule 56.1 Stmts.," using the specific paragraph from defendants' Rule 56.1 Statement.

[4/]     Unless otherwise noted, references to "Ex." are to Dkt. No. 12: Frank 1/9/12 Aff. Exs. A-O; Dkt. No. 20: Frank 1/23/12 Aff. Exs. P-T; Dkt. No. 26: Frank 1/30/12 Aff. Exs. U-W.

disagreement with Tsesarskaya and left the apartment.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶¶ 6-7; Ex. C: Tsesarskaya Dep. at 144-45, 156-57, 166-67; Ex. D: Tsesarskaya 50-H Hearing Tr. at 12-15; Ex. Q: Tsesarskaya CCRB Interview Tr. at 7-8, 15, 62, 65-66; Dkt. No. 28: Weiner 2/2/12 Aff. Ex. G: Tsesarskaya Dep. at 159, 162, 164.)  Tsesarskaya noticed that the women had left two large shopping bags in the apartment, and she told Minor to tell the two women to wait in the lobby and that she would bring them their bags.  (Ex. C: Tsesarskaya Dep. at 171-73; Ex. Q: Tsesarskaya CCRB Interview Tr. at 8.)  The two women, however, returned directly to Tsesarskaya's apartment, banging on the apartment door and yelling.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶ 8; Ex. C: Tsesarskaya Dep. at 173-75; Ex. Q: Tsesarskaya CCRB Interview Tr. at 8-9.)  Tsesarskaya refused to open the door because the women had been told to wait in the lobby for Tsesarskaya to bring the bags down.  (Ex. C: Tsesarskaya Dep. at 180-82.)

The two women called the police for assistance in recovering their property, and Officers Adriana DeLeon and Lazaros Asters responded.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶¶ 9, 11; Ex. C: Tsesarskaya Dep. at 181-82; Ex. R: DeLeon CCRB Interview at 73-74; Ex. S: Asters CCRB Interview at 89-91.)  Officers Asters and DeLeon knocked (or, according to Tsesarskaya, banged) on Tsesarskaya's door and identified themselves as police, but Tsesarskaya refused to open the door.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶¶ 12, 12(A-C); Frank 1/23/12 Aff. Ex. R: DeLeon CCRB Interview at 74, 76; Ex. S: Asters CCRB Interview at 90-91.)  Officer Asters recalled that Tsesarskaya may have stated that she did not believe that they were real police officers.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶ 12, 12(A); Ex. S: Asters CCRB Interview at 96.)  Officer Asters thought that Tsesarskaya was irrational because she would not open the door, and Officer DeLeon

thought that Tsesarskaya had some psychological issues because she would not open the door and was not responding to them.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶ 13; Ex. R: DeLeon CCRB Interview at 78-79; Ex. S: Asters CCRB Interview at 95-96.)  Officer Asters called the Emergency Services Unit ("ESU") in order to gain access to the apartment.  (Ex. S: Asters CCRB Interview at 92-93; Ex. R: DeLeon CCRB Interview at 76-77, 79.)

ESU Detectives Coll and Mulcahy arrived, as well as ESU Sergeant (now Lieutenant) Michael McGuiness, who was informed that Tsesarskaya was acting crazy, threw the women out of the apartment and was unresponsive to the officers at the door.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶¶ 9, 15, A8; Ex. I: 911 Sprint Report at NYC-84; Ex. J: Emergency Service Report; Ex. L: Coll Aff. ¶ 5; Ex. M: Mulcahy Aff. ¶ 5; Ex. T: McGuiness CCRB Interview at 103-05.)  Dets. Coll and Mulcahy and Sgt. McGuiness attempted to communicate with Tsesarskaya for approximately thirty minutes.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶ 16; Ex. L: Coll Aff. ¶ 6; Ex. M: Mulcahy Aff. ¶ 6; Ex. Q: Tsesarskaya CCRB Interview Tr. at 17; Ex. R: DeLeon CCRB Interview at 80; Ex. S: Asters CCRB Interview at 93-94; Ex. T: McGuiness CCRB Interview at 104-05.)

During the time the police were trying to get Tsesarskaya to open her apartment door, Tsesarskaya made and received calls, including two calls to 911 and one call from 911, and looked out her window and saw police officers, police vehicles, ambulances and fire trucks filling the street.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶¶ 17, 21, A2; Ex. C: Tsesarskaya Dep. at 188, 191-94, 196-97; Ex. N: Audio CD of 911 calls; Ex. Q: Tsesarskaya CCRB Interview Tr. at 10-13, 18-19; Ex. T: McGuiness CCRB Interview at 104-05.)  After her first call to 911, Tsesarskaya called her friend Svetlana Sky, sounding scared but rational, and said that her door was being broken by people

claiming to be the police.  (Tsesarskaya Rule 56.1 Stmt. ¶ A4; Weiner 1/23/12 Aff. Ex. D: Sky Aff.

¶ 3.)  Sky called 911, and the 911 operator said: "'if you were her friend, you should advise her so

they don't break the door down, for her to open the door'" and  "'[f]or the certain call that this job

was put in there, yes, they will break that door down.'"  (Tsesarskaya Rule 56.1 Stmt. ¶ A4; Weiner

1/23/12 Aff. Ex. D: Sky Aff. ¶¶ 4-5;  Weiner 1/23/12 Aff. Ex. E: Sky-911 Transcript at 8.)  Sky

called Tsesarskaya and conveyed this message.  (Tsesarskaya Rule 56.1 Stmt. ¶ A4; Weiner 1/23/12

Aff. Ex. D: Sky Aff. ¶ 6.)

Tsesarskaya eventually spoke with the officers at the door and told them that she was

okay and did not want to open the door.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶ 22; Ex. C:

Tsesarskaya Dep. at 197-202; Ex. Q: Tsesarskaya CCRB Interview Tr. at 66-67.)

While Tsesarskaya told the 911 operator that she would leave the bags outside her

apartment, Tsesarskaya did not communicate this to the officers outside her door.  (Defs. &

Tsesarskaya Rule 56.1 Stmts. ¶ 22; Ex. C: Tsesarskaya Dep. at 203-04; Ex. Q: Tsesarskaya CCRB

Interview Tr. at 12, 68; Ex. U: Coll 1/30/12 Aff. ¶ 7; Ex. V: Mulcahy 1/30/12 Aff. ¶ 7; Ex. W:

McGuiness 1/30/12 Aff. ¶ 7.)

When Tsesarskaya opened her door to avoid it being broken down, the officers

rushed inside.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶ 22; Ex. C: Tsesarskaya Dep. at 203-04; Ex.

Q: Tsesarskaya CCRB Interview Tr. at 13, 68; Ex. R: DeLeon CCRB Interview at 80-81, 83; Ex.

S: Asters CCRB Interview at 94.)

Dets. Coll and Mulcahy and Lt. McGuiness handcuffed Tsesarskaya and transferred

her to officers from the 17th Precinct.  (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶¶ 23, A8-A9; Ex.

D: Tsesarskaya 50-H Hearing Tr. at 26-27; Ex. L: Coll Aff. ¶ 6; Ex. M: Mulcahy Aff. ¶ 6; Ex. R: DeLeon CCRB Interview at 81; Ex. T: McGuiness CCRB Interview at 106, 116-17.)   At approximately 8:30 p.m., Tsesarskaya was taken without her consent by ambulance to Bellevue Hospital Center for a psychiatric evaluation; she was released around 2:30 a.m.   (Defs. & Tsesarskaya Rule 56.1 Stmts. ¶¶ 23, A9; Ex. C: Tsesarskaya Dep. at 212-14; Ex. D: Tsesarskaya 50-H Hearing Tr. at 26-27; Ex. I: 911 Sprint Report at NYC-89; Ex. Q: Tsesarskaya CCRB Interview Tr. at 13-14, 46-48; Ex. T: McGuiness CCRB Interview at 106.)

## ANALYSIS

## I.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P . 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support

the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g.,
Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

 To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is generally disputed." Fed. R. Civ. P. 56(c); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

 In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[5/]
The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

---

[5/] See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

## II.   DEFENDANTS' SUMMARY JUDGMENT MOTION IS DENIED AS TO TSESARSKAYA'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS

Tsesarskaya asserts claims for false arrest pursuant to § 1983 and false arrest and imprisonment pursuant to state law.  (Dkt. No. 8: Am. Compl. ¶¶ 45-47, 75-78, 79-83.)  Defendants move for summary judgment, arguing that Tsesarskaya's seizure was privileged under New York Mental Hygiene Law ("M.H.L.") § 9.41 (Dkt. No. 13: Defs. Br. at 4-6) and that defendants also had probable cause to arrest Tsesarskaya for petit larceny (Defs. Br. at 7-10; Dkt. No. 27: Defs. Reply Br. at 6-8).

### A.   Legal Standard Governing False Arrest Claims

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).  "Section

1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."   <u>Sykes</u> v. <u>James</u>, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), <u>cert. denied</u>, 512 U.S. 1240, 114 S. Ct. 2749 (1994); <u>see</u>, <u>e.g.</u>, <u>Morris-Hayes</u> v. <u>Bd. of Educ. of Chester Union Free Sch. Dist.</u>, 423 F.3d 153, 159 (2d Cir. 2005); <u>Thomas</u> v. <u>Roach</u>, 165 F.3d 137, 142 (2d Cir. 1999).[6/]

"It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause."   <u>Cook</u> v. <u>Sheldon</u>, 41 F.3d 73, 78 (2d Cir. 1994); <u>accord</u>, <u>e.g.</u>, <u>Lee</u> v. <u>Sandberg</u>, 136 F.3d 94, 102 (2d Cir. 1997).

"'A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.'"   <u>Covington</u> v. <u>City of N.Y.</u>, 171 F.3d 117, 122 (2d Cir.) (quoting <u>Weyant</u> v. <u>Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)), <u>cert. denied</u>, 528 U.S. 946, 120 S. Ct. 363 (1999); <u>see also</u>, <u>e.g.</u>, <u>Jenkins</u> v. <u>City of N.Y.</u>, 478 F.3d 76, 84 (2d Cir. 2007); <u>Boyd</u> v. <u>City of N.Y.</u>, 336 F.3d 72, 75 (2d Cir. 2003); <u>Jocks</u> v. <u>Tavernier</u>, 316 F.3d 128, 134 (2d Cir. 2003); <u>Caldarola</u> v. <u>Calabrese</u>, 298 F.3d 156, 161 (2d Cir. 2002); <u>Hygh</u> v. <u>Jacobs</u>, 961 F.2d 359, 366 (2d Cir. 1992).

---

[6/]   See also, e.g., Santiago v. Pressley, 10 Civ. 4797, 2011 WL 6748386 at *2 (S.D.N.Y. Dec. 23, 2011); Elliott v. City of N.Y., 06 Civ. 0296, 2008 WL 4178187 at *7 (S.D.N.Y. Sept. 8, 2008); Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *10 (S.D.N.Y. June 27, 2006) (Peck, M.J.), aff'd, 323 F. App'x 61 (2d Cir. 2009); Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 23481 at *6 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.), aff'd, 231 F. App'x 26 (2d Cir. 2007).

"Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Jocks v. Tavernier, 316 F.3d at 134-35 (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, cert. denied, 423 U.S. 929, 96 S. Ct. 277 (1975)); see, e.g., Golio v. Suggs, 285 F. App'x 773, 774-75 (2d Cir. 2008); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Covington v. City of N.Y., 171 F.3d at 122 ("Under New York law, 'a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification.'") (quoting Weyant v. Okst, 101 F.3d at 852); Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996); Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996).

"Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).[7/] "Probable cause to arrest

---

[7/]    Accord, e.g., Alvarado v. City of N.Y., No. 10-3908-CV, 2011 WL 6318027 at *1 (2d Cir. Dec. 19, 2011); Jean v. Montina, 412 F. App'x 352, 353 (2d Cir. 2011); Jenkins v. City of N.Y., 478 F.3d at 84; Escalera v. Lunn, 361 F.3d at 743; Caldarola v. Calabrese, 298 F.3d at 161; Kent v. Katz, 312 F.3d 568, 573 (2d Cir. 2002); Covington v. City of N.Y., 171 F.3d at 121; Marshall v. Sullivan, 105 F.3d at 50; Weyant v. Okst, 101 F.3d at 852; Singer v. Fulton Cnty. Sheriff, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Bernard v. United States, 25 F.3d 98, 102, 104 (2d Cir. 1994) ("the existence of [probable cause] is a complete defense to an action for false arrest"); Fox v. City of N.Y., 03 Civ. 2268, 2004 WL 856299 at *4-5 (S.D.N.Y. Apr. 20, 2004); Greenfield v. City of N.Y., 99 Civ. 2330, 2000 WL 124992 at *5 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); Shaw v. City of N.Y., 95 Civ. 9325, 1997 WL 187352 at *3 (S.D.N.Y. Apr. 15, 1997) (Peck, M.J.); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992) ("under New York law, 'probable cause serves as a complete defense to the charges of false arrest and malicious prosecution'"), aff'd, 993 F.2d
                                                                        (continued...)

exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  Escalera v. Lunn, 361 F.3d at 743 (quoting Weyant v. Okst, 101 F.3d at 852).[8/]  "Defenses which negate the existence of a crime should similarly negate probable cause" for an arrest.  Jocks v. Tavernier, 316 F.3d at 135.

### B.   Disputed Issues of Fact Exist as to Whether Tsesarskaya's Seizure Was Privileged Under M.H.L. § 9.41

Defendants assert that they are entitled to summary judgment on Tsesarskaya's false arrest and imprisonment claims because Tsesarskaya's seizure was privileged under M.H.L. § 9.41. (Dkt. No. 13: Defs. Br. at 4-6.)  M.H.L. § 9.41 provides that:  "Any . . . police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." M.H.L. § 9.41.  "[L]ikely to result in serious harm" is defined as:

> (a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

---

[7/]   (...continued)
1534 (2d Cir.), cert. denied, 510 U.S. 817, 114 S. Ct. 68 (1993).

[8/]   Accord, e.g., Alvarado v. City of N.Y., 2011 WL 6318027 at *1; Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010); Jenkins v. City of N.Y., 478 F.3d at 84; Jaegly v. Couch, 439 F.3d at 152; Boyd v. City of N.Y., 336 F.3d at 75-76; Caldarola v. Calabrese, 298 F.3d at 162; Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); Marshall v. Sullivan, 105 F.3d at 54.

M.H.L. § 9.01.  Defendants' conduct is privileged where there was probable cause to believe that the individual was a danger to herself or others.  See, e.g., Kerman v. City of N.Y., 261 F.3d 229, 240 n.8 (2d Cir. 2001); Glowczenski v. Taser Int'l Inc., No. CV04-4052, 2010 WL 1936200 at *6 (E.D.N.Y. May 13, 2010); Bayne v. Provost, No. 04-CV-44, 2005 WL 1871182 at *6 (N.D.N.Y. Aug. 4, 2005).  "For Fourth Amendment purposes, the reasonableness of an officer's belief must be assessed in light of the particular circumstances confronting the officer at the time." Kerman v. City of N.Y., 261 F.3d at 235.

Defendants argue that they "had a reasonable basis to believe that plaintiff was an emotionally disturbed person who was dangerous to herself or to others."  (Defs. Br. at 5.) Defendants rely on the assertion by the two Italian women that Tsesarskaya was acting crazy, Tsesarskaya's statements to 911 (although defendants admit in their reply brief that they were wholly unaware of Tsesarskaya's discussions with the 911 operator, see Defs. Reply Br. at 5), Tsesarskaya's refusal to open the door, and Tsesarskaya's "erratic and inconsistent behavior."  (Defs. Br. at 5-6; see pages 3, 4, 5 above.)  The Mental Health Law, however, requires that likelihood of serious harm be "manifested by threats of or attempts at suicide" or "homicidal or other violent behavior." M.H.L. § 9.01; see, e.g., Burdick v. Johnson, No. 06-CV-1465, 2009 WL 1707475 at *6 (N.D.N.Y. June 17, 2009) ("Defendants had probable cause to seize the Plaintiff pursuant to M.H.L. § 9.41. When Plaintiff called 911, he was extremely upset, ranting and raving, and threatening to 'shoot' and 'wipe out' a police officer.  Defendants were informed of this erratic behavior . . . ." (record citations omitted)); Bayne v. Provost, 2005 WL 1871182 at *7 (A "police officer is justified in relying upon a citizen's warning that another person has threatened suicide . . . ."); Higgins v. City of Oneonta,

208 A.D.2d 1067, 1070, 617 N.Y.S.2d 566, 569 (3d Dep't 1994)  ("Given [the officers'] knowledge of plaintiff's longstanding hostility toward certain members of the Police Department and City officials, coupled with [his psychiatrist's] opinion that plaintiff was dangerous and the obvious threatening nature of plaintiff's phone calls, there is sufficient evidence to find as a matter of law that defendants are entitled to the privilege afforded them by Mental Hygiene Law former § 9.41."), appeal denied, 85 N.Y.2d 803, 624 N.Y.S.2d 373 (1995).

Here, whether Tsesarskaya's behavior in refusing to open the door was sufficiently erratic to satisfy M.H.L. § 9.01, or just foolishly stubborn, is a question of fact for the jury.  See, e.g., Kerman v. City of N.Y., 261 F.3d at 241 (reversing summary judgment for defendant because "given the disputed accounts, a jury should decide what transpired between the officers and" plaintiff to determine whether reasonable officers could disagree that plaintiff was a danger to himself or others justifying hospitalization under M.H.L. § 9.41); Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs., 234 F. Supp. 2d 140, 170 (N.D.N.Y. 2002) (probable cause to arrest under the Mental Hygiene Law cannot be determined on summary judgment because "several jury questions exist as to the actions taken and facts known to the defendants").  Accordingly, the mental hygiene privilege cannot be decided on summary judgment.

### C.   Disputed Issues of Fact Exist as to Whether Defendants Had Probable Cause To Arrest Tsesarskaya For Petit Larceny

Defendants also assert that they had probable cause to arrest Tsesarskaya for petit larceny.  (Dkt. No. 13: Defs. Br. at 7-10; Dkt. No. 27: Defs. Reply Br. at 6-8.)  Pursuant to New York Penal Law:  "A person . . . commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds

such property from an owner thereof."  Penal Law § 155.05(1).  "Deprive" is defined as "(a) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him, or (b) to dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property."  Penal Law § 155.00(3).

In support of probable cause, defendants rely, in part, on <u>Gurevich</u> v. <u>City of N.Y.</u>, 06 Civ. 1646, 2008 WL 113775 at *1 (S.D.N.Y. Jan. 10, 2008) (Lynch, D.J.), where the complainant informed the police that plaintiff with whom he used to live would not allow him to retrieve his belongings in her apartment.  The court found that complainant's "statements to the officers, coupled with [plaintiff]'s own admissions and her continued refusal to return the property . . . , clearly established probable cause to arrest [plaintiff] for petit larceny based on her wrongful 'withhold[ing]' of property . . . ." <u>Id.</u> at *3.  The facts here differ from those in <u>Gurevich</u>.  Tsesarskaya withheld the women's bags for approximately three hours.  (<u>See</u> pages 3, 5 above.)  Tsesarskaya intended to immediately return the bags to the women in the lobby, told the women and the 911 operator that she would return the bags, and only refused to return them immediately because the women were banging on her door and yelling.  (<u>See</u> page 3 above.)  Moreover, Tsesarskaya opened the door to set the bags outside the door.  (<u>See</u> page 5 above.)  Whether the police had sufficient basis to reasonably believe that Tsesarskaya committed petit larceny must be resolved by the jury. <u>Compare</u>, <u>e.g.</u>, <u>Tribie</u> v. <u>Parwanta</u>, 10 Civ. 6016, 2012 WL 246619 at *5 (S.D.N.Y. Jan. 26, 2012) (denying summary judgment on false arrest claim where there were "two very different versions of what happened"); <u>Burgio</u> v. <u>Ince</u>, 79 A.D.3d 1733, 1733, 913 N.Y.S.2d 864, 865-66 (4th Dep't 2010)

("issues of fact concerning the existence of probable cause" preclude summary judgment where there was video footage of plaintiff reaching into the tip jar from which money was stolen but it was "impossible to discern whether plaintiff took anything"); with Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime [i.e. petit larceny] by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest . . . ."), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996); Gurevich v. City of N.Y., 2008 WL 113775 at *3; Prowisor v. Bon-Ton, Inc., 426 F. Supp. 2d 165, 172 (S.D.N.Y. 2006) (finding probable cause where there was a sworn complaint by store security guards that plaintiff had stolen a pair of earmuffs), aff'd, 232 F. App'x 26 (2d Cir. 2007); Dunn v. City of N.Y., 05 Civ. 5062, 1997 WL 309199 at *2 (S.D.N.Y. June 9, 1997) (finding probable cause for petit larceny based on statement that plaintiff refused to return wood upon request after having been informed that his check was not acceptable); Kampfer v. Pitcher, No. 95-CV-214, 1996 WL 31161 at *5 (N.D.N.Y. Jan. 19, 1996) (finding probable cause for petit larceny where officer had statements and documentary evidence from the victims, in addition to evidence substantiating the victims' claims), aff'd No. 96-9204, 112 F.3d 504 (table), 1997 WL 225101 (2d Cir. 1997).

        Defendants' summary judgment motion is DENIED on Tsesarskaya's false arrest claim.

**D.    Defendants' Summary Judgment Motion Based On Qualified Immunity is Denied**

Detectives Coll and Mulcahy and Sgt. McGuiness also move for summary judgment based on qualified immunity claiming that Tsesarskaya's arrest was privileged under M.H.L. § 9.41 or alternatively, there was arguable probable cause for petit larceny.  (Dkt. No. 13: Defs. Br. at 12, 15.)

Qualified immunity "shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known."  Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see, e.g., Stein v. Barthelson, 419 F. App'x 67, 69 (2d Cir. 2011); Wilson v. Aquino, 233 F. App'x 73, 76 (2d Cir. 2007); Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006); Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005); Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002).[9/]

An officer who acts without probable cause is entitled to qualified immunity from a suit for false arrest if he can show that there was at least "'arguable probable cause,'" which "exists

_____

[9/]    See also, e.g., Kraft v. City of N.Y., 696 F. Supp. 2d 403, 418 (S.D.N.Y. 2010) (Chin, D.J.), aff'd, 441 F. App'x 24 (2d Cir. 2011); Garcia v. Greco, 05 Civ. 9587, 2010 WL 446446 at *5 (S.D.N.Y. Feb. 9, 2010); Cotto v. Pabon, 07 Civ. 7656, 2008 WL 4962986 at *9 (S.D.N.Y. Nov. 20, 2008) (Peck, M.J.); Cerbelli v. City of N.Y., No. 99-CV-6846, 2008 WL 4449634 at *11 (E.D.N.Y. Oct. 1, 2008); Whittle v. Westchester Cnty. Police Dep't, 06 Civ. 3665, 2008 WL 919348 at *2 (S.D.N.Y. Mar. 28, 2008); McCray v. City of N.Y., 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 2007 WL 4352748 at *18 (S.D.N.Y. Dec. 11, 2007); Yates v. City of N.Y., 04 Civ. 9928, 2006 WL 2239430 at *8 (S.D.N.Y. Aug. 4, 2006); see generally Robinson v. Fischer, 09 Civ. 8882, 2010 WL 5376204 at *7 (S.D.N.Y. Dec. 29, 2010) (Peck, M.J.); Sudler v. Goord, 08 Civ. 11389, 09 Civ. 6510, 2010 WL 4273277 at *7-8 (S.D.N.Y. Oct. 6, 2010) (Peck, M.J.), report & rec. adopted, 2011 WL 691239 (S.D.N.Y. Feb. 23, 2011).

'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).[10/]  "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." Escalera v. Lunn, 361 F.3d at 743.[11/]  "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause. . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." Jenkins v. City of N.Y., 478 F.3d at 87.  Because qualified immunity is an affirmative defense, defendants bear the burden of showing that there was arguable probable

---

[10/]   Accord, e.g., Pacicca, v. Stead, No. 10-1069, 2011 WL 5515954 at *1 (2d Cir. Nov. 14, 2011); Crenshaw v. City of Mount Vernon, 372 F. App'x 202, 205 (2d Cir. 2010); Golio v. Suggs, 285 F. App'x 773, 774 (2d Cir. 2008); Guerrero v. Scarazzini, 274 F. App'x 11, 12-13 (2d Cir. 2008); Jenkins v. City of N.Y., 478 F.3d 76, 87 (2d Cir. 2007); Morales v. City of N.Y., 209 F. App'x 75, 76 (2d Cir. 2006); 5 Borough Pawn, LLC v. Marti, 753 F. Supp. 2d 186, 192 (S.D.N.Y. 2010); Cotto v. Pabon, 2008 WL 4962986 at *9; McCray v. City of N.Y., 2007 WL 4352748 at *18;  Chodkowski v. City of N.Y., 06 Civ. 7120, 2007 WL 2717872 at *5 (S.D.N.Y. Sept. 11, 2007); Carter v. City of N.Y., 427 F. Supp. 2d 307, 323-24 (S.D.N.Y. 2004); Jackson v. City of N.Y., 00 Civ. 1206, 2004 WL 895609 at *8 (S.D.N.Y. 2004).

[11/]   Accord, e.g., Barcomb v. Sabo, No. 07-CV-877, 2011 WL 1770795 at *11 (N.D.N.Y. May 9, 2011); Cotto v. Pabon, 2008 WL 4962986 at *9 (& cases cited therein); Kilgore v. Kaufman, No. 06-CV-612, 2008 WL 4426616 at *7 (N.D.N.Y. Sept. 25, 2008); Rollins v. N.Y. State Div. of Parole, No. 03-CV-5952, 2007 WL 539158 at *5 (E.D.N.Y. Feb. 16, 2007); Payne v. Cnty. of Nassau, No. 03-CV-1929, 2005 WL 2179419 at *6 (E.D.N.Y. Sept. 9, 2005); Mura v. Erie Cnty. Sheriff Dep't, No. 03-CV-6093, 2005 WL 615754 at *4 (W.D.N.Y. Mar. 16, 2005); Jackson v. City of N.Y., 2004 WL 895609 at *8; see, e.g., Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (The "arguable probable cause" standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'").

cause.  See, e.g., Jackler v. Byrne, 658 F.3d 225, 242 (2d Cir. 2011); Varrone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S. Ct. 2727, 2736 (1982)); Weather v. City of Mount Vernon, 08 Civ. 0192, 2011 WL 1046165 at *8 (S.D.N.Y. Mar. 22, 2011); Rosen v. City of N.Y., 667 F. Supp. 2d 355, 361 (S.D.N.Y. 2009); Tatum v. City of N.Y., 06 Civ. 4290, 2009 WL 124881 at *11 (S.D.N.Y. Jan. 20, 2009).

Dets. Coll and Mulcahy and Sgt. McGuiness argue that they are entitled to qualified immunity because they at least had arguable probable cause to believe that Tsesarskaya was an emotionally disturbed person or arguable probable cause to arrest Tsesarskaya for petit larceny. (Defs. Br. at 15.)

Here, there are material factual disputes, including the inferences that arise from the facts, relating to the legality of the entry into Tsesarskaya's apartment and her arrest, precluding resolution of the qualified immunity defense on summary judgment.  A fact-finder could find that the police did not even have arguable probable cause to handcuff Tsesarskaya and transport her to Bellevue Hospital Center.  Compare, e.g., McKelvie v. Cooper, 190 F.3d 58, 63 (2d Cir. 1999) ("Where, as here, there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate."); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996) (summary judgment is only appropriate if "there is no dispute as to the pertinent events and the knowledge of the officers"); Mangino v. Inc. Vill. of Patchogue, No. 06-CV-5716, --- F. Supp. 2d ----, 2011 WL 4527286 at *14 (E.D.N.Y. Sept. 30, 2011) ("Given the disputed facts regarding whether [defendant] fabricated the exigency so that he and the Fire Department could conduct an unconstitutional search, summary judgment on qualified immunity

grounds on this claim is unwarranted . . . ."); <u>Cunningham</u> v. <u>McCluskey</u>, 05 Civ. 10169, 2011 WL 2791336 at *6 (S.D.N.Y. June 22, 2011) (denying qualified immunity where the "Court cannot conclude that, as a matter of law, the defendants acted reasonably"), <u>report & rec. adopted</u>, 2011 WL 3478312 (S.D.N.Y. Aug. 8, 2011); <u>with</u> <u>Cotto</u> v. <u>Pabon</u>, 2008 WL 4962986 at *9; <u>Hoffman</u> v. <u>Cnty.</u> <u>of Del.</u>, 41 F. Supp. 2d 195, 209-10 (N.D.N.Y. 1999) (doctor was entitled to qualified immunity where plaintiff harbored ill feelings toward city officials, appeared to be paranoid, thought to have abused alcohol, threatened violence toward city officials, and was known to have a collection of firearms and other weapons), <u>aff'd</u>, No. 99-7691, 205 F.3d 1323 (table), 2000 WL 232757 (2d Cir. 2000); <u>Richardson</u> v. <u>Nassau Cnty. Med. Ctr.</u>, 840 F. Supp. 219, 221–22 (E.D.N.Y. 1994) (where plaintiff carried knives for his own protection and was found to be paranoid, delusional and dangerous, psychiatrist was entitled to qualified immunity for authorizing involuntary commitment).

The qualified immunity question here is a very close one.  While the Court recognizes that qualified immunity is "'an <u>immunity from suit</u> rather than a mere defense to liability,'" <u>Jenkins</u> v. <u>City of N.Y.</u>, 478 F.3d at 87 n.9, these defendants will proceed to trial on other claims in any event.  Because the excessive force claims (on which the defendants have not even moved for summary judgment) clearly will be tried, the better course is not to grant summary judgment on the false arrest claims based on qualified immunity.  Defendants' summary judgment motion based on qualified immunity is DENIED.[12]

---

[12]    Defendants similarly assert that Tsesarskaya's state law claims against the individual defendants should be dismissed because defendants are entitled to good faith immunity. (Defs. Br. at 19.)  Under New York law, good faith immunity provides a government employee with immunity from suit "'for those government actions requiring expert judgment
(continued...)

E.   **Detectives Coll and Mulcahy Are Denied Summary Judgment On Their Lack of Personal Involvement Defense To Tsesarskaya's Involuntary Hospitalization Claim**

Detectives Coll and Mulcahy seek summary judgment on Tsesarskaya's claim of false arrest arising from her involuntary hospitalization, alleging that they were not personally involved. (Dkt. No. 13: Defs. Br. at 11-12.)  While the detectives did not personally transport or accompany Tsesarskaya to Bellevue Hospital Center, they did seize and transfer Tsesarskaya to the custody of 17th Precinct officers, who took Tsesarskaya to Bellevue.  (See pages 5-6 above.)  "[T]ort defendants, including those sued under § 1983, are responsible for the natural consequences of [their] actions.  Thus, an actor may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties."  Kerman v. City of N.Y., 374 F.3d

---

12/   (...continued)
or the exercise of discretion . . . when the action involves the conscious exercise of a judicial or quasi-judicial nature.'"  Rosen v. City of N.Y., 667 F. Supp. 2d at 362; see, e.g., Tatum v. City of N.Y., 2009 WL 124881 at *11 ("'[G]overnmental immunity does not attach to every action of an official having discretionary duties but only to those involving an exercise of that discretion.'").  With respect to police officers, good faith immunity is a qualified immunity because they are not protected for unreasonable actions or those made in bad faith. See, e.g., Tatum v. City of N.Y., 2009 WL 124881 at *11; Bradley v. City of N.Y., 04 Civ. 8411, 2007 WL 232945 at *12 (S.D.N.Y. Jan. 26, 2007); Davis v. City of N.Y., 373 F. Supp. 2d 322, 339 (S.D.N.Y. 2005).  "Good faith immunity" under New York law is similar to qualified immunity under federal law.  Jenkins v. City of N.Y., 478 F.3d at 86.  "If the detective defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on [plaintiff's] state law false arrest claim."  Jenkins v. City of N.Y., 478 F.3d at 87.  "[U]nder both New York and federal law, . . . if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims."  Jenkins v. City of N.Y., 478 F.3d at 88.

Here, as discussed above with respect to qualified immunity under § 1983, there are disputed issues of fact regarding the reasonableness of defendants' actions.  Defendants' good faith immunity defense under state law therefore is inappropriate at the summary judgment stage.

93, 126 (2d Cir. 2004) (citations & quotations omitted); see, e.g., Wallace v. Suffolk Cnty. Police Dep't, No. 04-CV-2599, --- F. Supp. 2d ----, 2011 WL 3625574 at *5 (E.D.N.Y. Aug. 15, 2011); Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 161 (S.D.N.Y. 2009). Foreseeability is an issue of fact. Summary judgment is not appropriate because a jury could find that Tsesarskaya's involuntary hospitalization was a foreseeable consequence of Dets. Coll and Mulcahy's seizure and transfer of her custody to the 17th Precinct officers. See, e.g., Kerman v. City of N.Y., 374 F.3d at 127 ("[I]t is unquestionable here that [plaintiff]'s detention in the hospital for some period of time was a foreseeable consequence of [the arresting officer]'s sending him there."); Ross v. Lichtenfeld, 755 F. Supp. 2d 467, 476 (S.D.N.Y. 2010) ("[T]he question of whether the Board's actions were reasonably foreseeable as a result of [defendant]'s actions depends on disputed material facts which must be resolved by a jury."); Nelson v. Ulster Cnty., 789 F. Supp. 2d 345, 356-57 (N.D.N.Y. 2010) (denying summary judgment because it was "best left for a factfinder to resolve" whether the tort was a foreseeable consequence of defendant's actions); Ryan v. Dep't of Soc. Servs. of Albany Cnty., 16 Misc. 3d 1134(A) (table), 2007 WL 2500238 at *18 (Sup. Ct. Albany Co. Sept. 6, 2007) (denying summary judgment where "the trier of fact could conclude that Family Court's orders were a natural consequence of defendants' actions and, therefore, liability under Section 1983 may attach . . . ."), aff'd, 60 A.D.3d 199, 872 N.Y.S.2d 569 (3d Dep't), appeal denied, 12 N.Y.3d 710, 881 N.Y.S.2d 19 (2009).

　　　　　Dets. Coll and Mulcahy's summary judgment motion on lack of personal involvement is DENIED.

## IV.   DEFENDANTS SUMMARY JUDGMENT MOTION IS DENIED ON TSESARSKAYA'S § 1983 MUNICIPAL LIABILITY CLAIM

### A.   Legal Standard Governing § 1983 "Monell" Claims

It is well established that a municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior.  E.g., Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978); Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.1995); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991).[13/]  Rather, in order to hold a municipality liable under Section 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy.  See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300 (1986); Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011); Dwares v. City of

---

[13/]   See also, e.g., Justin R. ex rel. O'Toole v. Bloise, 06 Civ. 6228, 2011 WL 4684359 at *9 (S.D.N.Y. Oct. 5, 2011); Aggarwal v. N.Y.C. Health & Hosps. Corp., 98 Civ. 5063, 2000 WL 172787 at *7 (S.D.N.Y. Feb. 10, 2000); Greenfield v. City of N.Y., 99 Civ. 2330, 2000 WL 124992 at *8 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 703-04 (S.D.N.Y. 1999); Palmer v. City of Yonkers, 22 F. Supp. 2d 283, 290 (S.D.N.Y. 1998); Smith v. Montefiore Med. Ctr., 22 F. Supp. 2d 275, 282-83 (S.D.N.Y. 1998); Brodeur v. City of N.Y., 96 Civ. 9421, 1998 WL 557599 at *8-9 (S.D.N.Y. Sept. 2, 1998); Covington v. City of N.Y., 94 Civ. 4234, 1998 WL 226183 at *3 (S.D.N.Y. May 4, 1998); Johnson v. Rikers Island Hosp., 95 Civ. 10778, 1998 WL 91078 at *4 (S.D.N.Y. Mar. 3, 1998); King v. Dep't of Corr., 95 Civ. 3057, 1998 WL 67669 at *3 (S.D.N.Y. Feb. 18, 1998); Roman v. Morace, 97 Civ. 0341, 1997 WL 777844 at *9 (S.D.N.Y. Dec. 16, 1997); Woo v. City of N.Y., 93 Civ. 7007, 1996 WL 457337 at *4 (S.D.N.Y. Aug. 14, 1996) (Peck, M.J.) (and cases cited therein).

N.Y., 985 F.2d 94, 100 (2d Cir. 1993); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).[14/]
The plaintiff need not identify an explicit, official policy or practice.  See, e.g., Patterson v. Cnty.
of Oneida, 375 F.3d at 226; Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992).  It
is sufficient to show a widespread pattern of behavior that constitutes "'a custom or usage with the
force of law'" or "'the constructive acquiescence of senior policy-making officials.'"  Patterson v.
Cnty. of Oneida, 375 F.3d at 226; see, e.g., Belpasso v. City of N.Y., 07 Civ. 3627, 2008 WL
2676579 at *5 (S.D.N.Y. July 2, 2008); Gorton v. Gettel, 04 Civ. 0236, 2007 WL 2154193 at *9
(S.D.N.Y. June 22, 2007); Collins v. Stasiuk, 56 F. Supp. 2d 344, 345 (S.D.N.Y. 1999) ("The
decision to fire one man, for whatever reason, is neither a course or method of action . . . .  It is a
singular act, applicable to one individual . . . .  It is hard to imagine any decision that falls farther
outside the common understanding of the word 'policy.'").  "A policy, custom, or practice may also
be inferred where 'the municipality so failed to train its employees as to display a deliberate
indifference to the constitutional rights of those within its jurisdiction.'"  Patterson v. Cnty. of
Oneida, 375 F.3d at 226.

Any analysis of an allegation of municipal liability under Section 1983 begins with
"the question whether there is a direct causal link between a municipal policy or custom and the

---

[14/]   See also, e.g., Gorokhovsky v. City of N.Y., 10 Civ. 8848, 2011 WL 2019423 at *10
(S.D.N.Y. May 19, 2011); Aggarwal v. N.Y.C. Health & Hosps. Corp., 2000 WL 172787
at *7; Greenfield v. City of N.Y., 2000 WL 124992 at *8; McAllister v. N.Y.C. Police Dep't,
49 F. Supp. 2d at 704; Gonzalez v. City of N.Y., 97 Civ. 2246, 1998 WL 382055 at *2
(S.D.N.Y. July 9, 1998); Muniz v. New York, 96 Civ. 5931, 1997 WL 576033 at *2
(S.D.N.Y. Sept. 15, 1997); Palacios v. Corr. Officer Doe, 95 Civ. 6855, 1997 WL 458816
at *1 (S.D.N.Y. Aug. 12, 1997); Woo v. City of N.Y., 1996 WL 457337 at *4; Covington
v. City of N.Y., 916 F. Supp. 282, 288 (S.D.N.Y. 1996) (Peck, M.J.).

alleged constitutional deprivation."  <u>City of Canton</u> v. <u>Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197,

1203 (1989).<u>15/</u>

**B.     <u>The City's Summary Judgment Motion on Plaintiff's Monell Claim Is DENIED</u>**

Tsesarskaya alleges "the existence of an unlawful practice by subordinate officials

of the City of New York constituting an unconstitutional custom or usage of disregarding the Fourth

Amendment warrant requirement in cases involving purportedly emotionally disturbed individuals."

(Dkt. No. 17: Tsesarskaya Br. at 15.)

While a single incident is generally insufficient to show a municipal policy, evidence

suggesting "a pattern of misconduct from which it may be inferred that decisionmakers are approving

or at least acquiescing in the misconduct" is sufficient to survive summary judgment.  <u>White-Ruiz</u>

v. <u>City of N.Y.</u>, 93 Civ. 7233, 1996 WL 603983 at *7 (S.D.N.Y. Oct. 22, 1996); <u>see</u>, <u>e.g.</u>, <u>Okin</u> v.

<u>Vill. of Cornwall-On-Hudson Police Dep't</u>, 577 F.3d 415, 439 (2d Cir. 2009) ("A municipality may

be found to have a custom that causes a constitutional violation when 'faced with a pattern of

misconduct[, it] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly

authorized its subordinates' unlawful actions.'"); <u>Acquaah</u> v. <u>State Univ. of N.Y. Health Sci. Ctr.</u>,

No. 99-7350, 199 F.3d 1321 (table), 1999 WL 1022495 (2d Cir. Oct. 27, 1999); <u>Berry</u> v. <u>Vill. of</u>

---

<u>15/</u>     <u>Accord</u>, <u>e.g.</u>, <u>Collins</u> v. <u>City of Harker Heights</u>, 503 U.S. 115, 123, 112 S. Ct. 1061, 1067
(1992); <u>Greenfield</u> v. <u>City of N.Y.</u>, 2000 WL 124992 at *8; <u>Watkins</u> v. <u>City of Buffalo</u>, No.
95-CV-0816, 1999 WL 1068239 at *5 (W.D.N.Y. Nov. 12, 1999); <u>McAllister</u> v. <u>N.Y.C.
Police Dep't</u>, 49 F. Supp. 2d at 704 (citing cases); <u>Sundbye</u> v. <u>Ogunleye</u>, 3 F. Supp. 2d 254,
266 (E.D.N.Y. 1998); <u>Graham</u> v. <u>Fries</u>, No. 93-CV-3371, 1996 WL 1057212 at *9 (E.D.N.Y.
Oct. 16, 1996); <u>see also</u> <u>City of Okla. City</u> v. <u>Tuttle</u>, 471 U.S. 808, 823, 105 S. Ct. 2427,
2436 (1985) ("At the very least there must be an affirmative link between the policy and the
particular constitutional violation alleged.").

Millbrook, 09 Civ. 4234, --- F. Supp. 2d ----, 2011 WL 4445636 at *7 (S.D.N.Y. Sept. 26, 2011)

("'[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under

Monell, unless proof of the incident includes proof it was caused by an existing, unconstitutional

municipal policy, which policy can be attributed to a municipal policymaker.'" (quoting City of

Okla. City v. Tuttle, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436 (1985))); Rubio v. Cnty. of

Suffolk, No. 01-CV-1806, 2007 WL 2993833 at *5 (E.D.N.Y. Oct. 9, 2007) (refusing to find a

municipal policy where there were no facts to support the allegation), aff'd, 328 F. App'x 36 (2d Cir.

2009); Davis v. Cnty. of Nassau, 355 F. Supp. 2d 668, 678 (E.D.N.Y. 2005) ("A single incident

involving an employee below the policymaking level will generally not suffice to support an

inference of a municipal custom or policy, absent factual allegations 'tending to support, at least

circumstantially, such an inference.'" (citations omitted)); Fahle v. Braslow, 913 F. Supp. 145,

150-51 (E.D.N.Y. 1996) (refusing to draw inference of a municipal policy from the handling of a

single case without any other supporting evidence), aff'd, No. 96-7260, 111 F.3d 123 (table), 1997

WL 177185 (2d Cir. 1997).  "'The inference that a policy existed may, however, be drawn from

circumstantial proof . . . .'"  DeCarlo v. Fry, 141 F.3d 56, 61-62 (2d Cir. 1998) (citations &

quotations omitted); accord, e.g., White-Ruiz v. City of N.Y., 1996 WL 603983 at *7.

   In support of her Monell claim, Tsesarskaya presented the following evidence:

Tsesarskaya was designated as a "Barricaded EDP at location, designated due to actions (not letting

POs in)." (Tsesarskaya Br. at 15; Dkt. No. 12: Ex. K: IA Detailed Description.)  During Sky's call

to 911, the operator said:  "if you were her friend, you should advise her so they don't break the door

down, for her to open the door," and "[f]or the certain call that this job was put in there, yes, they

will break that door down." (Tsesarskaya Br. at 15-16; see page 5 above.) Tsesarskaya asserts that

the 911 operator told her that the officers would break down the door if she did not open it. (See

page 5 above.) (Tsesarskaya Br. at 16.) Because the alleged statements by the 911 operators could

support a finding that the City had a policy of breaking down apartment doors where the occupant

refused to open the door (especially if the police labeled the occupant as an EDP), the City's

summary judgment motion on Tsesarskaya's § 1983 municipal policy claim is DENIED. See, e.g.,

Taylor v. City of N.Y., 03 Civ. 6477, 2006 WL 1699606 at *7 (S.D.N.Y. June 21, 2006) ("[P]laintiff

has provided more than enough proof to create an issue of fact as to the existence of an

unconstitutional practice and on the issue of whether this practice caused him harm.").

## V.   DEFENDANTS' SUMMARY JUDGMENT MOTION IS GRANTED AS TO TSESARSKAYA'S NEGLIGENT HIRING, TRAINING, SUPERVISION OR RETENTION CLAIM UNDER STATE LAW

Tsesarskaya claims that the City "was negligent and careless when it selected, hired,

trained, retained, assigned, and supervised all members of its Police Department." (Dkt. No. 1:

Compl. ¶¶ 84-86; Dkt. No. 8: Am. Compl. ¶¶ 84-86.) Defendants' summary judgment motion

asserts that Tsesarskaya has not adduced "a scintilla of evidence" to support such a claim. (Dkt. No.

27: Defs. Reply Br. at 10.)

Under New York law, to state a claim for negligent hiring, training, supervision or

retention, "in addition to the standard elements of negligence, a plaintiff must show: (1) that the

tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer

knew or should have known of the employee's propensity for the conduct which caused the injury

prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or

with the employer's chattels."  Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (citations & quotations omitted); accord, e.g., Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 94 (2d Cir. 2011); Romano v. SLS Residential, Inc., 07 Civ. 0234, --- F. Supp. 2d ----, 2011 WL 2671526 at *10 (S.D.N.Y. June 22, 2011). "A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." Bouchard v. N.Y. Archdiocese, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (citations & quotations omitted).

Tsesarskaya has not submitted any evidence of the City's hiring, training, supervision or retention policies generally or as applied to the defendant officers, and simply responds to the motion by asserting that the City's "arguments are misplaced." (Dkt. No. 17: Tsesarskaya Br. at 17.) Summary judgment is appropriate where there is no proof that the employer (here, the City or N.Y.P.D.) acted negligently in hiring, training, supervising or retaining an employee.  See, e.g., Hattar v. Carelli, 09 Civ. 4642, 2012 WL 246668 at *5 (S.D.N.Y. Jan. 11, 2012); Biggs v. City of N.Y., 08 Civ. 8123, 2010 WL 4628360 at *9 (S.D.N.Y. Nov. 16, 2010); Bouchard v. N.Y. Archdiocese, 719 F. Supp. 2d at 263; Tatum v. City of N.Y., 06 Civ. 4290, 2009 WL 124881 at * 10 (S.D.N.Y. Jan. 20, 2009).

Defendants' summary judgment motion is GRANTED as to Tsesarskaya's negligent hiring, training, supervision and retention claim under state law.

## CONCLUSION

For the reasons stated above, defendants' summary judgment motion (Dkt. No. 10) is <u>DENIED</u> as to the false arrest and municipal liability claims under § 1983 and false arrest and imprisonment claims under state law, but <u>GRANTED</u> as to the state law claim of negligent hiring, training, supervision and retention.

## SCHEDULING ORDER

The Joint Pretrial Order is due March 15, 2012.  Counsel should confer and call my secretary to schedule the commencement of trial for some time soon after submission of the PTO.

SO ORDERED.

DATED:        New York, New York
              February 14, 2012

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies **by ECF** to:      Stephen Howard Weiner, Esq.
                           Philip Sebastian Frank, Esq.

G:\OPIN\TSESARSKAYA